UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

CHERE B. GOOCH-MARTIN,                    Case No. 2:13-cv-01638-GMN-PAL

                              Plaintiff,    **REPORT OF FINDINGS AND**
    v.                                      **RECOMMENDATION**

CAROLYN W. COLVIN, Acting                   (Mtn to Remand – Dkt. #12)
Commissioner of the Social Security         (Cross Mtn Affirm – Dkt. #15)
Administration,

                              Defendant.

   This case involves Plaintiff Chere B. Gooch-Martin's request for judicial review of the Commissioner of the Social Security Administration ("SSA"), Defendant Carolyn W. Colvin's final decision denying her claim for social security benefits under Title II of the Social Security Act (the "Act").

## BACKGROUND

   Plaintiff worked as an emergency room nurse for approximately 20 years. AR[1] 32. On March 3, 2008, she suffered a back injury while transporting a patient and eventually required spinal fusion surgery.  On February 17, 2010, Plaintiff filed an application for disability insurance benefits alleging she became disabled on the date of the work accident.  AR 121–24.  In her application, she claimed she was unable to work because of spinal disease, chronic nerve damage, left shoulder torn rotator cuff, and numbness in both legs.  AR 131.  The SSA denied Plaintiff's application initially and on reconsideration.  AR 69–73, 77–79.  An administrative law judge ("ALJ") held a hearing on October 25, 2011, where Plaintiff appeared with counsel.  AR 29–46.

---

[1]   AR refers to the Administrative Record, which was delivered to the undersigned upon the Commissioner's filing of her Answer (Dkt. #6) on December 5, 2013.

During the hearing, Plaintiff's counsel asserted that the theory of her case stemmed from the severe pain in her lower back radiating down her hips and legs to her feet and the constant numbness in her legs and feet.   AR 32.   Counsel argued that Plaintiff's back pain was exacerbated by her significant weight gain (approximately 75 pounds) since the surgery in 2009, and her depressive disorder demonstrated the severity of her physical symptoms.   AR 32–33.   However, counsel reiterated that Plaintiff's case was not based on a psychological disorder and Plaintiff's depressive disorder would not prevent her from working.   AR 33.

In a decision dated December 28, 2011, the ALJ found that Plaintiff was not disabled. AR 15–24.   Plaintiff requested review of the ALJ's decision by the Appeals Council, but the ALJ's decision became final when the Appeals Council denied review on June 11, 2013.  AR 5–7.   On September 9, 2013, Plaintiff filed Complaint (Dkt. #1) in federal court, seeking judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g).  The Commissioner filed her Answer (Dkt. #9) on December 5, 2013.  Plaintiff filed a Motion to Remand (Dkt. #10), and the Commissioner filed a Response and Cross-Motion for Summary Judgment (Dkt. #16, #17) on April 28, 2014.  The Court has considered the Motion, the Response and Cross-Motion, and Plaintiff's Reply (Dkt. #18) filed May 15, 2014.

## DISCUSSION

### I.   APPLICABLE LAW

#### A.   Judicial Review of Disability Determination

District courts review administrative decisions in social security benefits cases under 42 U.S.C. § 405(g).  *Akopyan v. Barnhart*, 296 F.3d 852, 854 (9th Cir. 2002).  The statute provides that after the Commissioner has held a hearing and rendered a final decision, a disability claimant may seek review of that decision by filing a civil lawsuit in a federal district court in the judicial district where the disability claimant lives.   42 U.S.C. § 405(g).   The statute also provides that the district court may enter, "upon the pleadings and transcripts of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."  *Id.*

1    The Commissioner's findings of fact are conclusive if supported by substantial evidence.

2    42 U.S.C. § 405(g); *Ukolov v. Barnhart*, 420 F.3d 1002 (9th Cir. 2005).  But the Commissioner's

3    findings may be set aside if they are based on legal error or not supported by substantial

4    evidence.  *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006); *Thomas v.*

5    *Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).  The Ninth Circuit defines substantial evidence as

6    "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a

7    reasonable mind might accept as adequate to support a conclusion."  *Andrews v. Shalala*, 53 F.3d

8    1035, 1039 (9th Cir. 1995); *see also Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir.

9    2005).  In determining whether the Commissioner's findings are supported by substantial

10   evidence, a court "must consider the entire record as a whole and may not affirm simply by

11   isolating a 'specific quantum of supporting evidence'."  *Ghanim v. Colvin*, 763 F.3d 1154, 1160

12   (9th Cir. 2014) (quoting *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012)).

13   Under the substantial evidence test, a court must uphold the Commissioner's findings if

14   they are supported by inferences reasonably drawn from the record.  *Batson v. Comm'r Soc. Sec.*

15   *Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004).  When the evidence will support more than one

16   rational interpretation, a court must defer to the Commissioner's interpretation.  *Burch v.*

17   *Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).  Consequently, the issue before a court is not

18   whether the Commissioner could reasonably have reached a different conclusion, but whether

19   the final decision is supported by substantial evidence.

20   It is incumbent upon an ALJ to make specific findings so that a court does not speculate

21   as to the basis of the findings when determining if the Commissioner's decision is supported by

22   substantial evidence.  *See Burrell v. Colvin*, 775 F.3d 1133, 1140 (9th Cir. 2014).  Mere cursory

23   findings of fact without explicit statements about what portions of the evidence were accepted or

24   rejected are not sufficient.  *Lewin v. Schweiker*, 654 F.2d 631, 634 (9th Cir. 1981).  An ALJ's

25   findings should be comprehensive, analytical, and include a statement explaining the "factual

26   foundations on which the ultimate factual conclusions are based."  *Id.*  *See also Vincent v.*

27   *Heckler*, 739 F.2d 1393, 1394–95 (9th Cir. 1984) (an ALJ need not discuss all the evidence in

28   the record, but must explain why significant probative evidence has been rejected).

1

### B.      Disability Evaluation Process

2      A claimant has the initial burden of proving disability.  *Roberts v. Shalala*, 66 F.3d 179,

3 182 (9th Cir. 1995).  To meet this burden, a claimant must demonstrate an "inability to engage in

4 any substantial gainful activity by reason of any medically determinable physical or mental

5 impairment which can be expected . . . to last for a continuous period of not less than 12

6 months."  42 U.S.C. § 423(d)(1)(A).  A claimant must provide specific medical evidence to

7 support his or her claim of disability.  *Reddick v. Chater*, 157 F.3d 715, 721 (9th Cir. 1998).  If a

8 claimant establishes an inability to perform his or her prior work, the burden shifts to the

9 Commissioner to show that the claimant can perform other substantial gainful work that exists in

10 the national economy.  *See Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012) (noting that a

11 claimant bears the burden of proof until the final step in the evaluation process).

12 ## II.      THE ALJ'S DECISION

13      An ALJ follows a five-step sequential evaluation process in determining whether a

14 claimant is disabled.  20 C.F.R. § 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987).  If at

15 any step an ALJ makes a finding of disability or non-disability, no further evaluation is required.

16 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003).

17      Here, the ALJ followed the five-step sequential evaluation process and issued an

18 unfavorable decision on December 28, 2011 (the "Decision").  AR 13–26.  Plaintiff does not

19 challenge the ALJ's findings at steps one through three, but asserts legal error at steps four and

20 five.  The parties stipulate that the ALJ fairly and accurately summarized the evidence and

21 testimony of record in the Decision, except as specifically addressed in their arguments.

22 ### A.      Step One

23      The first step of the disability evaluation requires an ALJ to determine whether the

24 claimant is currently engaging in substantial gainful activity ("SGA").  20 C.F.R.

25 §§ 404.1520(b), 416.920(b).  SGA is defined as work activity that is both substantial and gainful;

26 it involves doing significant physical or mental activities, usually for pay or profit.  20 C.F.R.

27 §§ 404.1572(a)–(b), 416.972(a)–(b).  If the claimant is currently engaging in SGA, then a finding

28

1  of not disabled is made.  If the claimant is not engaging in SGA, then the analysis proceeds to the
2  second step.

3       At step one in the Decision, the ALJ found that Plaintiff had not engaged in SGA since
4  March 3, 2008, the alleged onset date.  AR 17.

5       **B.     Step Two**

6       The second step of the disability evaluation addresses whether a claimant has a
7  medically-determinable impairment that is severe or a combination of impairments that
8  significantly limits him or her from performing basic work activities.  20 C.F.R. §§ 404.1520(c),
9  416.920(c).  An impairment or combination of impairments is not severe when medical and other
10 evidence establish only a slight abnormality or a combination of slight abnormalities that would
11 have no more than a minimal effect on the claimant's ability to work.  20 C.F.R. §§ 404.1521,
12 416.921; Social Security Rulings ("SSRs") 85-28, 96-3p, 96-4p.[2]  If a claimant does not have a
13 severe medically-determinable impairment or combination of impairments, then an ALJ will
14 make a finding that a claimant is not disabled.  If claimant has a severe medically-determinable
15 impairment or combination of impairments, then an ALJ's analysis proceeds to the third step.

16      At step two in the Decision, the ALJ found that Plaintiff had the following severe
17 impairments: (i) degenerative disc disease of the lumbar spine, (ii) obesity, and (iii) depressive
18 disorder.  AR 17–18.  To reach this conclusion, the ALJ relied upon the treatment records of
19 Thomas Vater, M.D. (*see, e.g.*, AR 249–65, 285–88) and John Siegler, M.D. (*see, e.g.*, AR 289–
20 336), among others.  With regard to her spinal condition, the ALJ noted that Plaintiff underwent
21 spinal fusion surgery performed by Dr. Vater and Frank T. Jordan, M.D. on April 14, 2009.  AR
22 195–97.  However, for the depressive disorder, the medical record indicates that Plaintiff did not
23 seek counseling or medication for any mental health condition and had never been hospitalized
24 for a psychiatric condition.  AR 22, 359.  The ALJ considered the combined effect of all of the
25 Plaintiffs' impairments on her ability to function, including her obesity, without regard to

---

27 [2] SSRs are the SSA's official interpretations of the Act and its regulations.  *See Bray v. Comm'r Soc. Sec.
   Admin.*, 554 F.3d 1219, 1224 (9th Cir. 2009); *see also* 20 C.F.R. § 402.35(b)(1).  They are entitled to
28 some deference as long as they are consistent with the Act and regulations.  *See Bray*, 554 F. 3d at 1223
   (finding that an ALJ erred in disregarding SSR 85-41).

whether each alone was sufficiently severe.  Although there were "minimal findings in the medical evidence," the ALJ determined that Plaintiff's three impairments were severe and continued his analysis to the next step.  AR 17.

### C.    Step Three

Step three of the disability evaluation requires an ALJ to determine whether a claimant's impairments or combination of impairments meet or medically equal the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, which is commonly referred to as the "Listings."  20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.826.  If a claimant's impairment or combination of impairments meet or equal the criteria of the Listings and meet the duration requirement (20 C.F.R. §§ 404.1509, 416.909), then an ALJ makes a finding of disability.  20 C.F.R. §§ 404.1520(h), 416.920(h).  If a claimant's impairment or combination of impairments does not meet or equal the criteria of the Listings or meet the duration requirement, then the analysis proceeds to the next step.

At step three in the Decision, the ALJ found that the medical record did not show that Plaintiffs' impairments were of  sufficient severity to meet or equal Listings 1.04 (disorders of the spine), 12.04 (affective disorders), or 12.07 (somatoform disorders), or any other listed impairment.  AR 18.  Although no treating or examining medical source attributed additional or cumulative limitations to Plaintiff's obesity and Appendix 1 does not contain Listing criteria specific to obesity, the ALJ followed the guidelines of SSR 02-1p in considering whether obesity has an adverse impact upon Plaintiffs' co-existing impairments.  *Id.*  The Decision notes that the ALJ considered the four broad functional areas known as the "paragraph B criteria" in Listing 12.00C of the Listing of Impairments set forth at 20 C.F.R., Part 404, Subpart P, Appendix 1.  AR 19.  *See also* 20 C.F.R. § 1520a (explaining the psychiatric review technique); SSR 96-8p (noting that application of the technique is documented on a Psychiatric Review Technique Form).  The ALJ also considered the "paragraph C criteria" in Listing 12.04.  AR 19.  However, the ALJ concluded that Plaintiffs' physical and mental impairments did not meet or medically equal the criteria of Listings.  AR 18–19.  As such, the ALJ's analysis continued to Plaintiff's RFC.

### D.     Step Four – Plaintiff's RFC

The fourth step of the disability evaluation requires an ALJ to determine whether a claimant has the residual functional capacity ("RFC") to perform her past relevant work ("PRW").  20 C.F.R. §§ 404.1520(f), 416.920(f).  To answer this question, an ALJ must first determine a claimant's RFC.  20 C.F.R. §§ 404.1520(e), 416.920(e).  RFC is a function-by-function assessment of a claimant's ability to do physical and mental work-related activities on a sustained basis despite limitations from impairments.  SSR 96-8p.  In making this finding, an ALJ must consider all the relevant evidence such as symptoms and the extent to which they can be reasonably be accepted as consistent with the objective medical evidence and other evidence.  20 C.F.R. §§ 404.1529, 416.929; SSRs 96-4p, 96-7p.  To the extent that statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, an ALJ must make a finding on the credibility of a claimant's statements based on a consideration of the entire case record.  An ALJ must also consider opinion evidence in accordance with the requirements of 20 C.F.R. §§ 404.1527 and 416.927 and SSRs 96-2p, 96-5p, and 06-3p.

After considering the entire record, the ALJ determined that Plaintiff had the RFC to perform sedentary work as defined in 20 C.F.R. § 404.1567(a), but is limited to unskilled work.  AR 19.  In making this finding, the ALJ "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and the other evidence."  AR 20.  He also considered opinion evidence.  *Id*.  Although the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause her alleged symptoms, he determined that Plaintiff's statements concerning the intensity, persistence and limiting effects of those symptoms were not credible to the extent they were inconsistent with the RFC Assessment.  *Id*., *see also* AR 349–56 (Physical RFC Assessment).

### 1.     Plaintiff's Medical Symptoms

Insofar as Plaintiff alleged symptoms and functional limitations that would preclude her from performing the activities described in her RFC, the ALJ found that Plaintiff's "allegations are disproportionate to the objective findings of the medical record, inconsistent with the medical

7

1   opinion evidence, exaggerated, and not fully credible."  AR 22.  First, the ALJ pointed out that

2   Plaintiff's objective medical records show that she had reached maximum medical improvement,

3   despite her allegations of ongoing back pain.  *Id*., *see also* AR 285.  The ALJ, found the medical

4   record generally indicated that the side effects of Plaintiff's medications are mild and would not

5   interfere with her ability to perform work activities in any significant way.  AR 22.[3]

6        The Decision specifically stressed the absence of opinions from Plaintiff's providers that

7   she is disabled or has any limitations more severe than what the ALJ accounted for in Plaintiff's

8   RFC.  *Id*.  The one exception was Dr. Siegler's medical source statements, which the ALJ

9   "substantially discounted" because they were inconsistent and unsupported by the minimal

10  evidence of record.  *See* AR 20–22.  Plaintiff began treating with Dr. Siegler, a pain management

11  specialist, in August 2009, approximately five months after her spinal fusion surgery.  AR 20,

12  303–04.  A treatment note by Dr. Siegler, dated September 14, 2009, documents Plaintiff's

13  statement that her medications were controlling her symptoms.  AR 20, 297.  Her self-report was

14  consistent with a September 2009 treatment note by Dr. Vater stating that Plaintiff was only

15  concerned with her left hip, her lumbar spine was doing better, and she was "improving nicely."

16  AR 287.  A physical therapy record from October 2009 noted moderate complaints of pain and

17  difficulty.  AR 20, 270.  On November 23, 2009, Dr. Vater opined that Plaintiff had reached

18  maximum medical improvement, was "stable and ratable as it pertains to the lumbar spine

19  treatment," and he released her from his care.  AR 20, 285.  Likewise, in treatment notes dated

20  November 23 and 30, 2009, Dr. Siegler focuses on Plaintiff's hip, not her back.  AR 21, 289–92.

21       Plaintiff continued to see Dr. Siegler for leg, hip, and back pain after being released by

22  Dr. Vater.  AR 315–21.  In March 2010, Dr. Siegler recommended "permanent restrictions of no

23  lifting, pushing, or pulling over ten pounds, bending on an occasional basis, no climbing ladders,

24  no squatting, kneeling or crawling."  AR 21, 313.  In June 2011, Dr. Siegler completed another

25

26  [3]  Plaintiff's physicians adjusted her medications numerous times to better address her pain but her medical records do not indicate that the adjustments were due to the medications' side effects.  *See, e.g.*,

27  AR 250–52; 304.  Although one treatment note states that Neurontin made her sleepy, AR 324, Plaintiff continued its use.  *See* AR 320–23.  Plaintiff reported that her pain was "relieved with medications

28  particularly with Neurontin."  AR 330.  On March 4, 2010, Dr. Siegler noted that Plaintiff was stable on her medications.  AR 308.

statement on Plaintiff's behalf stating that she was "unable to sit for any length of time" and "has difficulty with cognitive tasks because of sedation from the pain medications." AR 21, 184. However, an unsigned and undated medical source statement within Dr. Siegler's records stated that Plaintiff could lift and/or carry 10 pounds occasionally and less than 10 pounds frequently and indicated that her vocational level was "sedentary or light." AR 21, 310; *see also* AR 320–21. This was the median vocational level as the statement also displays two lower levels ("sedentary" and "less than sedentary") and two higher levels ("medium" and "heavy"). AR 310. Although the statement showed that Plaintiff could not perform postural movements, it stated that Plaintiff could stand and/or walk at least two hours and sit for six hours or more in an eight-hour workday. *Id*. Based on the inconsistencies in Dr. Siegler's own records and the difference between the opinions of Dr. Siegler and Plaintiff's other medical providers, the ALJ concluded that Dr. Siegler's opinion was "at best, a clear example of patient advocacy." AR 21.

In addition to Plaintiff's medical records, the ALJ considered the opinions of a consultative examiner and a state agency review physician. The ALJ relied on the results of Plaintiff's comprehensive evaluation with Khalid A. Kamal, M.D. AR 21–22, 342–48 (Consultative Examination Report). Functionally, Dr. Kamal opined that Plaintiff would be able to lift and/or carry 20 pounds occasionally, and 10 pounds frequently, stand and/or walk six hours in an 8-hour workday, could sit for eight hours in an 8-hour workday, and perform all postural maneuvers occasionally. AR 347. However, Dr. Kamal restricted Plaintiff from working around heights and moving machinery. AR 348. The ALJ also considered the findings of the state agency review physician, George Nickles, M.D., who concluded that Plaintiff was capable of working at a light exertional level and could occasionally perform postural maneuvers. AR 23, 349–356 (Physical RFC Assessment).

### 2. **Plaintiff's Functional Limitations**

In his determination regarding the degree of Plaintiff's functional limitation, the ALJ assessed the four broad categories found in paragraph B and C of the adult mental disorders listings and summarized in the Psychiatric Review Technique Form. With regard to episodes of decompensation, the ALJ observed that Plaintiff has experienced no episodes of

9

1  decompensation.  AR 19.  This is consistent with Plaintiff's testimony and medical records

2  showing that she had not received counseling or medication for any mental health condition and

3  had never been psychiatrically hospitalized.  AR 40, 359.[4]

4      The ALJ found that Plaintiff had only "mild restrictions" in activities of daily living and

5  "mild difficulties" with social functioning.  AR 18–19.  Plaintiff self-reported that she used

6  assistive devises to walk, shower, and use the toilet.  *See generally* AR 166–172 (Pl.'s Function

7  Report), 357–65 (Psychological Evaluation by Steven Goldstein, Ed. D.).  She experienced sleep

8  difficulties and needed help to complete laundry and other household chores.  AR 168, 358, 364.

9  However, she also reported that she was able to complete a wide variety of daily activities

10 without assistance, such as preparing quick meals, feeding herself, going shopping, driving a car,

11 using public transportation, managing her money, reading, watching television, sending emails,

12 playing word games, crocheting.  AR 168–70, 358–59, 364.  Regarding her social interactions,

13 Plaintiff reported attending church services and keeping in touch with others in person, on the

14 phone, and through emails.  AR 170–71, 359, 364.

15     Plaintiff's concentration, persistence, or pace showed "moderate difficulties."  AR 19.

16 Plaintiff stated that she has difficulty completing tasks and following both written and verbal

17 instructions.  AR 171–72, 362–64.  However, after performing an extended mental status

18 examination, Dr. Goldstein noted that Plaintiff displayed a "somatic preoccupation" and her pain

19 seemed to distract her.  AR 362, 364.  Dr. Goldstein opined that Plaintiff would be able to do the

20 following on a sustained basis: (1) carry out one to two step instructions; (2) understand,

21 remember, and carry out detailed instructions with mild difficulties; (3) interact appropriately

22 with the public, co-workers, and supervisors; and (4) maintain concentration and attention

23 sufficient to carry out one to two step instructions.  AR 19, 22, 364–65.  The ALJ also considered

24 the findings of the state agency review psychologist, Pastora Roldan, Ph.D., who found that

25 Plaintiff's mental impairments of affective disorder and somatoform disorder were non-severe

---

[4] *See also* AR 158 (Report of Contact states that Plaintiff did not feel treatment was needed for her mental impairment and that her psychological symptoms do not limit or affect her functioning); AR 33–34 (counsel's remarks at the hearing confirm that her case was not based on a psychological disorder and the depressive disorder would not prevent her from working).

and unsupported by objective medical evidence.  AR 23, 372–85 (Psychiatric Review Technique Form).

### 3.  **Plaintiff's Credibility**

The ALJ found that Plaintiff's own actions and testimony undermined her credibility and demonstrated exaggeration of symptoms.  AR 22.  After sitting for 20 minutes in the hearing, Plaintiff testified that she was only able to sit for total of 10 minutes.  AR 42.  In July 2010, Plaintiff reported that she occasionally drove herself.  AR 169 (Adult Function Report); *see also* AR 156 (Exertional Activities Questionnaire).  However, Plaintiff testified that she was unable to drive a vehicle because she cannot sit and she had not driven since before her surgery in April 2009.  AR 40–41.  These contradictions significantly questioned Plaintiff's credibility regarding the impact of her impairments on her activities of daily living.  AR 22.  The ALJ also stated that Plaintiff has a "decreased incentive to return to work as she has been receiving $2500.00 per month in worker's compensation benefits."  *Id.*  Given the inconsistencies between Plaintiff's self-reported daily activities and limitations, the multiple evaluations of her medical and mental impairments, and her testimony and actions, the ALJ concluded that the totality of the evidence in the record did not support Plaintiff's allegations that she could not handle the stress of work or would be incapable of performing simple, unskilled work.  *Id.*

Based on his function-by-function analysis of Plaintiff's physical and mental limitations in the Decision, the ALJ found that Plaintiff has the RFC to perform sedentary unskilled work as defined in 20 C.F.R. § 404.1567(a).  AR 19.  In explaining how he reached this RFC determination, the ALJ noted the weight he afforded the multiple providers.[5]  The ALJ gave the opinions of treating and examining physicians, Drs. Vater, Kamal, and Goldstein substantial weight as they were consistent with the objective medical record.  The opinions of the state agency review physicians and psychologist, Drs. Nickles and Roldan were given weight as non-examining experts.  However, the opinion of treating physician, Dr. Siegler, was "substantially discounted" because the ALJ found it to be inconsistent and unsupported by the objective evidence of record.  *See* AR 20–22.

---

[5]  Plaintiff does not contest the weight afforded to her medical providers or examiners.

In addition, the Decision notes that the ALJ's findings regarding Plaintiff's RFC were more generous than that of the state agency review physicians and psychologist.  AR 23.  For instance, the ALJ concluded that Plaintiff had the RFC to perform sedentary unskilled work, although Dr. Nickles opined that she was capable of working at a light exertional level.  *Id.*, *see also* AR 349–356.  The ALJ afforded "the maximum possible credibility to the claimant's subjective complaints of symptoms and functional limitations, given the objective findings of the medical record, which do not support her allegations to the severity alleged."  AR 23.

### E.    Step Four – Plaintiff's Ability to Perform her PRW

Once an ALJ has determined a claimant's RFC as an initial consideration at step four, an ALJ utilizes the RFC assessment to determine whether a claimant can perform her PRW.  20 C.F.R. §§ 404.1520(f), 416.920(f).  PRW means work performed either as a claimant actually performed it or as it is generally performed in the national economy within the last fifteen years or fifteen years prior to the date that disability must be established.  In addition, the work must have lasted long enough for a claimant to learn the job and to perform it as SGA.  20 C.F.R. §§ 404.1560(b), 404.1565, 419.960(b), 416.965.  If a claimant has the RFC to perform his or her past work, then an ALJ makes a finding that a claimant is not disabled.

At step four in the Decision, the ALJ found that Plaintiff's PRW as an emergency room nurse is performed at a medium level of exertion, and skilled with a specific vocational profile of seven.  AR 23.[6]  After comparing Plaintiff's RFC with the physical and mental demands of her PRW, the ALJ found that Plaintiff is unable to perform her PRW.  *Id*.  As a result, the ALJ continued his analysis to the final step.

### F.    Step Five

Step five of the disability evaluation requires an ALJ to determine whether a claimant is able to do any other work considering his or her RFC, age, education, and work experience.  20 C.F.R. §§ 404.1520(g), 416.920(g).  If he or she can do other work, then an ALJ makes a finding that a claimant is not disabled.  The Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart

---

[6]  The Dictionary of Occupational Titles (DOT) describes Plaintiff's PRW as an emergency room nurse at No. 075.364-010.  AR 23.

P, Appendix 2, commonly known as the "Grids," aid the ALJ in the step five analysis for cases that cannot be evaluated on medical considerations alone.  The Grids consist of three "Tables" that each represents a different RFC: sedentary, light, and medium work.  *Id*.  Each Table also presents the vocational factors Congress has identified as important: age, education, and work experience.  For individuals whose characteristics match the criteria of a particular Grid rule, the rule "directs a conclusion as to whether the individual is or is not disabled.  *Id*.  The Grids were developed to recognize that a claimant's age significantly restricts one's ability to learn, adapt, and adjust to a new job in a new working environment.  *Calvin v. Heckler*, 782 F.2d 802, 805–06 (9th Cir. 1986).  Thus, as claimants grow older, they are more likely to be found disabled in each exertional category, even if they have the physical strength and mental ability to perform some type of job.  *See* Soc. Sec. Disability Law & Pro. § 3:79 (2015).

Although a claimant generally continues to have the burden of proving disability at this step, a limited burden of going forward with the evidence shifts to the Commissioner.  The Commissioner is responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that the claimant can do.  *Yuckert*, 482 U.S. at 141–42; *see also Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012) (citing 42 U.S.C. § 423(d)(2)(A)).

At step five in the Decision, the ALJ determined that Plaintiff could perform jobs that exist in significant numbers in the national economy, considering her age, education, work experience, and RFC, in conjunction with the Grids.  AR 23–24.  On the alleged date of disability, Plaintiff was 44 years old, which categorized her as a younger individual age 18–44, and she subsequently changed age category to a younger individual age 45–49.  AR 23.  Plaintiff has at least a high school education and is able to communicate in English.  *Id*.  Based upon Plaintiff's specific vocational profile and her ability to perform a full range of sedentary unskilled work, the ALJ determined that Medical Vocational Rules 201.28 and 201.21 directed a

finding that Plaintiff is not disabled.[7]  AR 24.  Accordingly, the ALJ concluded Plaintiff was not disabled from March 3, 2008 through the date of the Decision.  *Id*.

### III.   THE PARTIES' POSITIONS ON APPEAL

#### A.   Plaintiff's Position

Plaintiff seeks reversal and remand of the ALJ's decision on the grounds that the ALJ failed to properly assess Plaintiff's RFC and, therefore, failed to pose a complete and accurate hypothetical to the vocational expert.  Pl.'s Mot. (Dkt. #10) at 6–7.  Plaintiff argues that the medical opinions from examining sources demonstrate that she has a more restrictive RFC.  *Id*. at 6.  Although the ALJ gave great weight to Dr. Goldstein's opinion, Plaintiff contends that the ALJ's limitation to sedentary unskilled work does not adequately account for the limitations Dr. Goldstein found.  Dr. Goldstein opined that Plaintiff would be able to carry out one-to-two step instructions on a sustained basis, and Plaintiff argues that such limitation "represents a significant nonexertional limitation beyond unskilled work that would impact work capacities." *Id*. at 7.  She asserts that a one-to-two step limitation "significantly erodes the occupational base for the full range of unskilled sedentary work" and the ALJ did not provide a reason for rejecting a portion of Dr. Goldstein's opinion.  Pl.'s Reply (Dkt. #18) at 4–5.  Plaintiff further asserts that the ALJ committed legal error by failing to pose a hypothetical question to the vocational expert that included a limitation to one-to-two step instructions.  Pl.'s Mot. (Dkt. #10) at 7.

In addition, Plaintiff maintains that the ALJ erred by failing to articulate sufficient reasons to find that Plaintiff was not credible.  *Id*. at 8.  Although the ALJ discounted Plaintiff's complaints as disproportionate to the objective medical record, Plaintiff contends that the ALJ cannot reject her testimony "based solely on the alleged lack of objective medical evidence corroborating it."  *Id*. at 10.  Plaintiff also faults the ALJ's observations during the hearing that she was exaggerating her complaints and unmotivated to return to work because she was

---

[7]  Rules 201.28 and 201.21 appear in Table No. 1 of the Grids and apply to individuals who are limited to sedentary unskilled work.  Rule 201.28 applies to a younger individual age 18–44, who is a high school graduate or more, and is skilled or semiskilled with non-transferable skills.  Rule 201.21 applies to a younger individual age 45–49, who is a high school graduate or more, and is skilled or semiskilled with non-transferable skills.  Under either Rule, the individual is not disabled.

1  receiving $2,500 per month in worker's compensation.  *Id*. at 10–11.  Lastly, Plaintiff argues that

2  her ability to perform limited activities of daily living was not a clear and convincing reason to

3  discount her complaints.  *Id*. at 11–12.  The ability to perform various activities of daily living

4  does not necessarily translate into the ability to perform in a work setting on a consistent basis.

5  *Id*. at 12.

6        **B.**     **The Commissioner's Position**

7        The Commissioner seeks affirmance of the ALJ's Decision asserting that the ALJ

8  properly assessed Plaintiff's RFC and determined that Plaintiff's is not disabled.  Resp. & Cross-

9  Mot. (Dkt. ##16–17).  The Commissioner maintains that the ALJ's RFC finding is supported by

10  substantial evidence and free from legal error.  Plaintiff does not challenge the ALJ's

11  determination that she can perform sedentary unskilled work; rather, the Commissioner points

12  out that Plaintiff wanted the ALJ to limit her to "performing only sedentary work involving one

13  to two step instructions."  *Id*. at 4.  However, the Commissioner asserts that Plaintiff's position

14  cherry-picks from Dr. Goldstein's opinion.  For example, Dr. Goldstein also stated that Plaintiff

15  " 'would be able to understand and carry out detailed instructions' with only 'mild difficulties'."

16  *Id*. at 5 (citing AR 364).  Additionally, the Commissioner asserts that the findings of the state

17  agency psychologist and Plaintiff's treating physicians are substantial evidence supporting the

18  ALJ's conclusion that Plaintiff can perform at least unskilled work.  *Id*.  The Commissioner also

19  notes that Plaintiff's argument regarding a hypothetical to the vocational expert is "derivative of

20  her contention that the RFC finding is improper."  *Id*. at 6.  Because the ALJ's RFC finding is

21  free of legal error, the Commissioner asserts that the ALJ properly relied upon Medical

22  Vocational Rules 201.28 and 201.21, which directed a finding that Plaintiff is not disabled.  *Id*. at

23  6–7.

24        Finally, the Commissioner argues that the ALJ properly assessed Plaintiff's credibility

25  because the Decision provides specific, permissible reasons for finding Plaintiff's testimony less

26  than credible.  *Id*. at 7.  For example, in contrast to her admitted activities such as driving,

27  grocery shopping, and doing laundry, *see* AR 168–69 (Pl.'s Function Report), Plaintiff testified

28  that she does no grocery shopping, no laundry, and has not driven since April 2009, *see* AR 39–

1   40 (Hr'g Tr.).   Resp. & Cross-Mot. (Dkt. ##16–17) at 8–9.   Thus, the Decision included

2   sufficient details to ensure that the ALJ did not arbitrarily discredit Plaintiff's testimony.

3   <u>**ANALYSIS AND FINDINGS**</u>

4        Reviewing the record as a whole, weighing both the evidence that supports and the

5   evidence that detracts from the ALJ's conclusion, the Court finds the ALJ's decision is supported

6   by substantial evidence, and the ALJ did not commit legal error.

7   **I.   THE ALJ'S RFC FINDINGS ARE SUPPORTED BY SUBSTANTIAL EVIDENCE**

8        The Court finds that the ALJ properly evaluated the medical evidence of record in

9   assessing Plaintiff's RFC.   Plaintiff's brief does not assert that the ALJ failed to consider any

10  particular medical evidence in the Decision.   Plaintiff does not challenge the weight the ALJ

11  afforded to the opinions of any of her physicians, consultative examiners, or the state agency

12  review physician and psychologist.   Instead, Plaintiff argues that the ALJ should have found

13  further restrictions on her RFC because Dr. Goldstein's opinion significantly limited the

14  occupational base for the full range of sedentary unskilled work.   Plaintiff asserts that a one-to-

15  two step limitation restricts her to reasoning level one occupations.

16        First, the record reveals that Dr. Goldstein did not opine that Plaintiff was limited to work

17  consisting of one to two step instructions.   Plaintiff's contention is based on a single sentence in

18  Dr. Goldstein's opinion stating that "[o]n a sustained basis based upon her present intellectual

19  abilities, this claimant should be able to understand, remember, and carry out one to two step

20  instructions."   AR 364.   However, his next statement recognized that she would also "be able to

21  understand, remember and carry out detailed instructions with mild difficulties."   *Id*.   Thus, Dr.

22  Goldstein's opinion is consistent with the ALJ's RFC findings.

23        Second, to the extent there were conflicting opinions and testimony regarding the degree

24  of Plaintiff's functional limitations, it was the ALJ's duty to resolve those conflicts.   For highly

25  fact-intensive individualized determinations like a claimant's entitlement to disability benefits,

26  Congress has deferred to agency expertise and, for the sake of uniformity, has minimized the

27  opportunity for reviewing courts to substitute their discretion for that of the agency.   *Treichler v.*

28  *Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014) (quoting *Consolo v. Fed. Mar.*

16

1    *Comm'n*, 383 U.S. 607, 621 (1966)).   Consequently, it is the ALJ's duty "to determine

2    credibility, resolve conflicts in the testimony, and resolve ambiguities in the record."  *Id.* (citing

3    42 U.S.C. § 405(g) (directing that the Commissioner's findings shall be conclusive as to any fact

4    supported by substantial evidence); *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)).

5         Here, the ALJ's findings regarding Plaintiff's mild degree of functional limitations are

6    supported by the opinions of Dr. Goldstein and Dr. Roldan, the state agency review psychologist.

7    Dr. Roldan opined that Plaintiff's mental impairments were non-severe and unsupported by

8    objective medical evidence.  AR 23, 372–85 (Psychiatric Review Technique Form).  Dr. Roldan

9    found that all of Plaintiff's functional limitations (*i.e.* restrictions of activities of daily living;

10   difficulties in maintaining social functioning; and difficulties in maintaining concentration,

11   persistence or pace) were mild.  It was the ALJ's job to consider Dr. Goldstein's statement about

12   Plaintiff's ability to perform one-to-two step instructions and resolve any conflicts it presented

13   with Dr. Roldan's opinion or the rest of Dr. Goldstein's findings.  If the record will support more

14   than one rational interpretation, the Court must uphold the Commissioner's interpretation.  *See*

15   *Burch*, 400 F.3d at 679.  Plaintiff does not cite a single medical record of a treating or examining

16   physician which opines she was unable to work or had any limitations beyond what the ALJ

17   accounted for in Plaintiff's RFC.  AR 22.  The ALJ's findings are amply supported by the record

18   and inferences reasonably drawn from the record. The Decision is supported by substantial

19   evidence.  *See Batson*, 359 F.3d at 1193.

20        Reviewing the record as a whole, the Court finds that the ALJ did not err in his

21   assessment that Plaintiff has the RFC to perform sedentary unskilled work. The ALJ properly

22   relied upon Medical Vocational Rules 201.28 and 201.21, which directed a finding that Plaintiff

23   is not disabled.

24   **II.    THE ALJ PROPERLY EVALUATED PLAINTIFF'S CREDIBILITY**

25        In assessing the credibility of a claimant's testimony regarding subjective pain or the

26   intensity of symptoms, the ALJ engages in a two-step analysis.  *Molina*, 674 F.3d at 1112 (citing

27   *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009)).  First, the ALJ must determine whether

28   there is objective medical evidence of an impairment which could reasonably produce the pain or

other symptoms alleged.  *Id.*  In this first step, a claimant need only show that her impairment could reasonably have caused *some degree* of the symptom she has alleged.  *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014) (quoting *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996)).  A claimant is not required to (i) show that the impairment could reasonably be expected to cause the severity of the symptom, or (ii) produce objective medical evidence of the pain or fatigue, or the severity thereof.  *Id.*  Second, if objective medical evidence exists, and there is no evidence of malingering, the ALJ must give "specific, clear and convincing reasons" for rejecting the claimant's testimony about the severity of her symptoms.  *Garrison*, 759 F.3d at 1014–15 (quoting *Smolen*, 80 F.3d at 1281).  Although the Ninth Circuit has recognized that this is not an easy requirement to meet, *id.* at 1012, "the ALJ is not required to believe every allegation of disabling pain," otherwise disability benefits "would be available for the asking, a result plainly contrary to 42 U.S.C. § 423(d)(5)(A)."  *Molina*, 674 F.3d at 1112 (citation omitted).

In evaluating a claimant's testimony, the ALJ may use "ordinary techniques of credibility evaluation." *Id.* (quoting *Turner v. Comm'r of Social Sec.*, 613 F.3d 1217, 1224 n.3 (9th Cir. 2010)).  For example, an ALJ may consider factors such as: (i) inconsistencies either in the claimant's testimony or between the testimony and the claimant's conduct; (ii) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; (iii) whether the claimant engages in daily activities inconsistent with the alleged symptoms; (iv) the observations of treating and examining physicians and other third parties regarding the claimant's symptoms; (v) functional restrictions caused by the symptoms; and (vi) the claimant's daily activities.  *Id.* (citation omitted); *Rounds v. Comm'r Soc. Sec. Admin.*, 795 F.3d 1177, 1186 (9th Cir. 2015) (quoting *Smolen*, 80 F.3d at 1284).  The ALJ must specify "which symptom testimony is not credible and what facts in the record lead to that conclusion." *Id.*

In this case, the ALJ's credibility findings are supported by substantial evidence because the Decision articulates specific reasons for determining that Plaintiff's testimony was not credible.  The Decision specifically points out inconsistencies in Plaintiff's testimony and adult function report to support the credibility finding.  For example, the ALJ noted that after sitting

for 20 minutes in the hearing, Plaintiff testified that she was only able to sit for total of 10 minutes.  AR 42.  In her adult function report, Plaintiff reported that she occasionally drove herself.  AR 156, 169.  However, Plaintiff testified at the hearing that she was unable to drive a vehicle because she cannot sit and she had not done so since before her surgery in April 2009.  AR 40–41.  These findings show that the ALJ did not reject Plaintiff's testimony based solely on a lack of medical evidence corroborating her subjective complaints.

The ALJ's findings are further bolstered by the conclusions of Drs. Kamal, Nickles, Goldstein, and Roldan.  Dr. Kamal opined that Plaintiff would be able to lift and/or carry 20 pounds occasionally, and 10 pounds frequently, stand and/or walk six hours in an 8-hour workday, could sit for eight hours in an 8-hour workday, and perform all postural maneuvers occasionally.  AR 347.  Dr. Nickles concluded that Plaintiff was capable of working at a light exertional level and could occasionally perform postural maneuvers.  349–356 (Physical RFC Assessment).   These medical opinions were consistent with the previously discussed psychological opinions by Drs. Goldstein and Roldan reporting that Plaintiff experienced only mild functional limitations based on her mental impairments.  The Decision emphasizes these conclusions by noting "the record does not contain any opinions from the claimant's providers that she is disabled, or has any limitations that are more severe than what are accounted for in the [RFC]."  AR 22.

Additionally, the Decision shows that the ALJ did not reject Plaintiff's complaints in their entirety.  Although Plaintiff asserts that her ability to perform limited activities of daily living was not a clear and convincing reason to discount her complaints, the ALJ gave Plaintiff the benefit of the doubt by restricting her to sedentary *unskilled* work.  *See* AR 22.  An ALJ "may discredit a claimant's testimony when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting."  *Molina*, 674 F.3d at 1112–13.  Even when those activities suggest some difficulty in functioning, "they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment."  *Id.* at 1113 (citation omitted).  Based on the testimony and medical evidence, the ALJ could reasonably conclude that Plaintiff's activities, including

preparing quick meals, going shopping, driving a car, managing her money, reading, watching television, and playing word games, undermined her claims that she was incapable of doing sedentary unskilled work because of her pain.  AR 168–70, 358–59, 364.  It was also reasonable for the ALJ to conclude that daily activities interacting with others, such as sending emails, talking on the telephone, and attending church services, were transferable to a work setting.  AR 170–71, 359, 364.

Because the ALJ's adverse credibility determination was supported by specific, clear, and convincing reasons, the Court must uphold it.

## **CONCLUSION**

Judicial review of a decision to deny disability benefits is limited to determining whether the decision is based on substantial evidence reviewing the administrative record as a whole.  It is the ALJ's responsibility to make findings of fact, draw reasonable inferences from the record as a whole, and resolve conflicts in the evidence and differences of opinion.  Having reviewed the Administrative Record as a whole, and weighing the evidence that supports and detracts from the Commissioner's conclusion, the Court finds that the ALJ's decision is supported by substantial evidence under 42 U.S.C. § 405(g).  Accordingly,

**IT IS RECOMMENDED:**

1.  Plaintiff's Motion for Remand and/or Reversal (Dkt. #10) be DENIED.

2.  The Commissioner's Cross-Motion to Affirm (Dkt. #16) be GRANTED.

3.  The Clerk of Court be instructed to enter judgment accordingly and close this case.

Dated this 3rd day of November, 2015.

_____
PEGGY A. LEEN
UNITED STATES MAGISTRATE JUDGE